UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICK DIXON,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 5:15-cv-341 (GJS)<br><br>**MEMORANDUM OPINION AND<br>ORDER** |

## INTRODUCTION

In this social security benefits case, Dixon raises two challenges: (1) that the Administrative Law Judge ("ALJ") erred by finding Dixon to be not entirely credible based on six inconsistencies in her testimony; and (2) that the submission of a July 2013 MRI to the Appeals Council rendered the ALJ's decision not supported by substantial evidence.  Because the Court finds no error, it affirms the Commissioner's decision denying Dixon's requests for benefits.

## PROCEDURAL HISTORY

On September 21, 2011, Dixon applied for disability insurance benefits and supplemental security income based on a disability that began on June 10, 2010. [Admin. Rec. ("AR") 234-242.]  The Commissioner denied the application initially

1   and on reconsideration.  [AR 149-53, 155-63.]  Dixon sought and received a hearing

2   before ALJ Sharilyn Hopson.  [AR 164, 167-85.]  On July 18, 2013, the ALJ held a

3   hearing and received testimony from Dixon, a medical expert, and a vocational

4   expert.  [AR 62-98.]  Less than a month later, the ALJ ruled that Dixon was not

5   disabled within the meaning of the Social Security Act.  [AR 23-42.]

6        Dixon sought review from the Appeals Council on September 12, 2013.  [AR 20-

7   22.]  More than a year later, the Appeals Council denied review, rendering the

8   ALJ's decision the final decision of the Commissioner under 42 U.S.C. § 405(h).

9   [AR 1-7.]

10

11                    **ADMINISTRATIVE DECISION UNDER REVIEW**

12        At Step One, the ALJ concluded that Dixon "ha[d] not engaged in substantial

13   gainful activity since June 10, 2010, the alleged onset date[.]"  [AR 28.][1]  She then

14   concluded that Dixon suffered from the severe impairments of degenerative disc

15   disease of the cervical and lumbar spine, asthma, anxiety, and depression.  [AR 29.]

16   These impairments did not satisfy any Listing, singly or in combination.  [*Id.*]  At

17   Step Four, the ALJ concluded that Dixon has the following residual functional

18   capacity ("RFC"):

19                    [T]o perform sedentary work …[,] except the claimant
20                    can lift and carry 10 pounds occasionally and less than 10

21   _____

22   [1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.
23   20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:  (1) Is the claimant
     presently engaged in substantial gainful activity?  If so, the claimant is found not
24   disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If
     not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the
25   claimant's impairment meet or equal the requirements of any impairment listed at 20
     C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If
26   not, proceed to step four; (4) Is the claimant capable of performing her past work?
     If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the
27   claimant able to do any other work?  If not, the claimant is found disabled.  If so, the
28   claimant is found not disabled.  20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

pounds frequently; stand and walk 2 hours in an 8 hour work day; sit 6 hours in an 8 hour work day; occasionally climb stairs, but no ladders, ropes, or scaffolds; no work at unprotected heights; occasionally balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to dust fumes, and other pulmonary irritants and limited to simple routine tasks.

[AR 30.]  Based on that RFC, and with the aid of a vocational expert's testimony, the ALJ concluded that Dixon could "perform the requirements of representative occupations such as an order clerk …, with 19,000 jobs nationally and a final assembler …[,] with 28,000 jobs nationally."  [AR 36.]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## DISCUSSION

**I.**   **The ALJ's Determination that Dixon Was Not Credible is Supported by At Least One Clear and Convincing Reason.**

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. Nov. 3, 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).  The ALJ concluded that Dixon was not credible because she was inconsistent.  [AR 35.]  The following chart summarizes the ALJ's findings:

| Dixon's Claim | Contrary Finding |
|---|---|
| 1 | [T]he claimant attested that she became unable to work because of her disabling condition on June 10, 2010 on her Title II application[.] … Then in her Title XIV application, the claimant stated her disability began on December 27, 2008. | [A]t the hearing, the claimant testified that she was laid off. |

| Dixon's Claim | Contrary Finding |
|---|---|
| 2 | [S]he alleges she has decreased sensation and weakness in her legs[.] | [N]eurological examinations repeatedly showed intact sensation and normal muscular tone. |
| 3 | [T]he claimant informed Dr. Henry in May 2010 that a surgeon 'recommended surgery' and that she was looking for a second opinion. | [J]ust two months prior to her visit with Dr. Henry, Dr. Mesiwala, a neurosurgeon, specifically opined that given 'the fact that she has no objective neurologic deficits, it was hard to justify surgical intervention' in March 2010. |
| 4 | [T]he claimant claims shortness of breath when climbing stairs; inability to lift anything over '3 pounds'; and severe functional limitation. … [T]he claimant alleges that she fell at her doctor's office from standing and that she could not get up and 'actually crawled down the stairs.' | [T]he treatment notes are devoid of such incidents or occurrences. |
| 5 | [T]he claimant asserts that she is moody and depressed[.] | [T]here is no evidence of on-going psychiatric treatment other than taking Celexa[.] |
| 6 | | [T]he consultative psychologist noted that the claimant was a vague and evasive historian; her attitude was one of disinterest in the tasks at hand; and that the claimant was minimally cooperative and did not appear to be putting forth her best effort. |

The record amply supports the ALJ's credibility analysis.  To discuss just a few reasons, first, the ALJ was entitled to rely on the findings of Dr. Krieg, the consultative psychologist, that Dixon was uncooperative at the consultative evaluation.  *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  Second, the ALJ certainly could find that Dixon was less than truthful about her medical condition when she told Dr. Henry that surgery had been recommended for her when the medical records demonstrate that no such recommendation had been made.  Third, the ALJ was entitled to weigh the consultative psychologist's opinion

5

of Dixon's effort and performance, particularly where, as here, Dixon provided her story at the hearing to explain why she disagreed with the psychologist's opinions. "Where 'the evidence can reasonably support either affirming or reversing a decision, [this Court] may not substitute our judgment for that of the [ALJ]." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)) (citations omitted).  Here, the Court finds that the ALJ's reason—inconsistency—is clear and convincing, as well as supported by substantial evidence.  As in *Tonapetyan*, "[e]ven if [this Court] discount[s] some of the ALJ's observations of [Dixon's] inconsistent statements and behavior, which might have innocent explanations as [Dixon] contends, [the Court is] still left with substantial evidence to support the ALJ's credibility determination."  242 F.3d at 1148.

## II.   The Commissioner's Decision is Supported by Substantial Evidence.

Dixon's briefing is a little unclear about whether she challenges the Appeals Council's procedural decision to deny review based on the allegedly new and material evidence or the Commissioner's substantive decision finding no disability. The Ninth Circuit has clearly foreclosed the former.  This Court "do[es] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  That said, "the ALJ's decision becomes the final decision of the Commissioner" once the Appeals Council denies review.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  "[A]s a practical matter, the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence considered by that body is 'evidence upon which the findings and decision complained of are based.'" *Brewes*, 682 F.3d at 1162.  So sometimes, a decision that was supported by substantial evidence at the ALJ stage could cease to be supported by substantial evidence after the Appeals Council's denial of review.  *Brewes*, 682 F.3d at 1163; *Taylor*, 659 F.3d at 1232.

1    Dixon does not challenge the ALJ's decision as a whole, and indeed, concedes

2    that "the ALJ fairly and accurately summarized the medical and non-medical

3    evidence of record, except as specifically stated in the Issues and Contentions."

4    [Dkt. 24 ("Jt. Stip.") at 4.]  Accordingly, the Court must only determine whether the

5    evidence presented to the Appeals Council renders the ALJ's opinion, which is

6    concededly supported by substantial evidence, no longer so.

7        At the Appeals Council, Dixon submitted a July 2013 lumbar spine MRI.  [AR

8    710].  According to Dixon, the new MRI shows that she suffers from more severe

9    degenerative disc disease at the L4-5 level than previously believed, based on,

10    among other things, a disc's increased protrusion from 3mm to 4mm.  [Jt. Stip. at 23

11    (citing AR 710).]

12       Dixon does not even attempt to identify an ALJ conclusion or specific RFC

13    limitation that the new evidence undermines.  Nor does the Court perceive one.

14    Based on a March 2012 MRI, the ALJ concluded that Dixon suffered from moderate

15    degenerative disc disease in the lumbar spine.  [AR 29, 33; *see also* AR 74 (medical

16    expert testifying: "It's associated with degenerative disc with a minimal disc

17    protrusion.  It's … three at L5.").]  Dixon is correct that, if the July 2013 MRI is to

18    be interpreted as she says, it "supports Dixon's allegations that her condition has

19    worsened over time[.]"  [Jt. Stip. at 23.]  The ALJ never found otherwise.  And

20    perhaps Dixon's continued deterioration means that she is *now*, or will later be,

21    disabled.  But without more, the Court cannot conclude that the July 2013 MRI,

22    even if accepted as evidence of her further degeneration, undermines the ALJ's RFC

23    and ultimate finding of no disability.

24

25                          **CONCLUSION**

26    For all of the foregoing reasons, **IT IS ORDERED** that:

27    (1) the decision of the Commissioner is AFFIRMED and this action is

28        DISMISSED WITH PREJUDICE; and

                                    7

1   (2) Judgment be entered in favor of the Commissioner.

2   **IT IS HEREBY ORDERED.**

4   DATED: March 03, 2016     _____

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

8